IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PETER PEDERSEN, | ) |
| *Plaintiff*, | ) Civil Action No. 6:22-cv-00410-ADA |
| | ) Patent Case |
| v. | ) |
| | ) Jury Trial Demanded |
| ORACLE CORPORATION, | ) |
| *Defendant*. | ) |

## ORACLE CORPORATION'S 12(b)(6) MOTION TO DISMISS

**I.   INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Oracle Corporation ("Oracle") moves to dismiss the Complaint (Dkt. 1), with prejudice, for failure to state a claim upon which relief can be granted.

The claim chart Mr. Pedersen appends to the Complaint—containing the entirety of his factual assertions—fails to allege that the accused Oracle product, Responsys, meets all of the accused limitations. Rather, Mr. Pedersen substitutes his own actions for the limitations that he was unable to chart against Responsys. As one example, the asserted patent (which is directed to a messaging system) requires an "individual message generator" that, to paraphrase, sends out messages according to when a recipient desires to receive them. Instead of charting this limitation against a feature of Responsys, Mr. Pedersen himself sent out messages on particular days, which he (again, on his own) correlated to recipient timing preferences. In other words, Mr. Pedersen acts as the claimed "individual message generator" himself. He does not actually accuse Oracle of doing it or having such a feature, even though he had the accused Responsys product available

1

prior to filing the Complaint. There is simply no reason this case should exist unless and until Mr. Pedersen can plausibly allege that *Oracle* (and not Mr. Pedersen taking his own action) meets all the limitations of at least one claim.

## II.     BACKGROUND

On April 22, 2022, Mr. Pedersen sued Oracle Corporation ("Oracle") for infringement of U.S. 6,965,920 (the "'920 patent"), which is directed to a system for distributing messages in which, inter alia, a message recipient creates a profile to specify where, when and how they prefer to receive specific types of messages. This profile is then sent to an "individual message generator," to "generate individual messages" to be sent to individual recipient according to their profile preferences (i.e., the where, when, and how they want to receive the messages). Figure 8 of the '920 patent, reproduced below, represents "the process related to individual message generator system . . . for how the message uploaded or entered is combined with the message delivery profiles and how an output file with individual messages is generated and submitted for distribution." Compl., Ex. A at 4:50-54.

**Compl., Ex. A Fig. 8.**



Figure 8

Per the specification, a processor "looks up 402 the message in the message database 320, and also looks up the recipient message profiles and delivery profiles in the recipient message profile database[s]." Compl., Ex. A at 10:63-67. Subsequently, in step "403, the message output filter 420 of the individual message generator 400 combines the message with the delivery profile data for all recipients matching the profile and creates a total output file. The message output filter 420 then submits 404 the message output file to a message distribution server (not a part of this invention) and to the message output database 415 for storage." Compl., Ex. A at 11:3-9. Claim

1, repeated below for context, requires that this process be done by an "electronic computer system" and also requires the "individual message generator," as described above:

> An electronic message management system comprising:
>
> an electronic computer system in operative communication with a global digital communications network, and an electronic message management database in operative communication with the computer system; the electronic computer system having
>
> a recipient profile application for receiving recipient profile data from recipients via the global network and storing the recipient data in the database, the profile data including delivery parameters specified by a recipient of where, when and how specific types of messages from specific messengers are delivered to the recipient,
>
> a messenger profile application for receiving messenger profile data from messengers via the global network and storing the messenger data in the database, including messenger identifying data,
>
> a message input application for receiving message files from a messenger via the global network and storing the message files in the database, and
>
> an individual message generator in communication with the database and operative to access and utilize data and files from the database to generate an individual message to be sent to the recipient specified by the messenger via the global communications network according to the delivery parameters, and a message management server operating system; and
>
> the message management database including recipient and messenger profile databases for storing recipient and messenger profile data respectively, and a message database for storing message data files."

Compl., Dkt. 1, Ex. A at 11:19-50.

The Complaint is devoid of any non-boilerplate allegations, save an incorporated claim chart (Exhibit B), purporting to compare claim 1 of the '920 patent to Oracle's Responsys product, which Mr. Pedersen alleges is largely "messenger"[1] customizable. *See, e.g.*, Compl., Ex. B at 1

---

[1] The claim chart, Compl., Ex. B, alleges that the users of Responsys are "messengers," despite the claim chart never depicting the sending or receiving of any message.

("Oracle Responsys enables *messengers to create* a Sign up Form for receiving recipient profile data") (emphasis added); *id.* at 2 ("Oracle Responsys provides the software code for *messengers to implement* the recipient profile form *in the messenger's website*") (emphasis added); *id.* at 7 ("Specifically, the recipient profile form *can* include delivery parameters.") (emphasis added).

Nevertheless, Mr. Pedersen's claim chart fails to identify anything in Responsys that allegedly meets most of the limitations of claim 1. Instead, he himself performs many of the claim limitations and substitutes his own actions for those supposedly performed by Responsys.

Mr. Pedersen's depiction of how a recipient creates a profile to specify where, when and how to receive messages is exemplary. Claim 1 of the '920 patent requires, for example, "a recipient profile application for receiving profile data from recipients . . . the profile data including delivery parameters specified by a recipient of where, when and how specific types of messages from specific messengers are delivered to the recipient." Compl., Ex. A at 11:26-32; Ex. B at 1-8. Rather than identify a function or attribute of Responsys that meets this limitation, Mr. Pedersen created his own purported recipient sign-up form, typing in himself the words "Weekday," "Device," "Interests," "Full_Name_Forms," and "Account," and then (again, himself, and not as part of functionality provided by Responsys) entering the purported preferred days of the week, one-by-one, as possible values for the form.

**Compl., Ex. B at 8, Fig. 4 (depicting the entry of field names typed one-by one under "Create Table" with explicit instructions to "enter the field names").**



**Compl., Ex. B at 6, Fig. 2 (purported recipient profile sign-up form featuring the "field names" from above and identifying "Sunday" and "Saturday" as "weekdays").**



**Compl., Ex. B at 7, Fig. 3 (depicting "actions" that can be taken including, "create form") (emphases in original).**



The same is true with respect to the "individual message generator" limitation. Mr. Pedersen made *himself* the claimed "individual message generator."  As depicted, Mr. Pedersen (1) created a table called "Peter Test Table," (2) decided that he wanted to send a "Monday email promotion," and (3) (presumably) sent bulk messages to everyone who had checked "Monday" in the Field of the form he manually created, as discussed above.  In other words, Mr. Pedersen does not identify any part *of Responsys* that sends messages according to recipient-specified delivery parameters—he did it himself.  Ironically, he appears to have sent the message on Wednesday, not Monday. Compl., Ex. B at 15, Fig. 12.

Mr. Pedersen's manufactured and implausible theory of infringement cannot plausibly create liability for Oracle.  Moreover, this is not a situation where more time or more discovery is

8

needed. Mr. Pedersen plainly had access to Responsys and still failed to plead a plausible claim. The Complaint should be dismissed with prejudice.

### III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While factual allegations of the complaint are taken to be true, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions, will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S at 678.

Moreover, a motion to dismiss is properly granted where the plaintiff pleads facts that undermine his complaint. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("the [Amended Complaint] contains too much rather than too little, to the point that Bot M8 has essentially pleaded itself out of court."); *see also McKeown v. City of Chicago*, 20 F. App'x 856, 858 (Fed. Cir. 2001) (affirming summary judgement where plaintiff "plead himself out of court by pleading facts that undermine the allegations set forth in his complaint"); *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *4 (E.D. Tex. Nov. 17, 2020) ("On its face, Qwikcash's alleged theory of direct infringement . . . contains a fatal inconsistency.").

### IV. MR. PEDERSEN HAS PLEADED HIMSELF OUT OF COURT

As described above, claim 1 of the '920 patent requires recipients to specify where, when and how they prefer to receive messages. Compl., Ex. A at 11:26-32; Ex. B at 1, 7. But the claim chart depicts that Mr. Pedersen has himself created a "sign up form" with his own customized

variables and named it "sign-up-form.htm." See Ex. B at 2, Fig. 1a (depicting "sign-up-form.htm" as last modified on February 9, 2022 by username "matheus.cunha"); Compl., Ex. B at 3, Fig. 1b (depicting "Name" field as editable under "form summary"). He does not actually identify anything in Responsys that does this.

As for the "individual message generator" that uses the recipient's preferences, Mr. Pedersen's claim chart purports to show "an example of a Campaign in Oracle Responsys using the Targeting and Filter function . . . according to [the] delivery parameters." Compl., Ex. B at 13. But this conclusory statement is undermined by the depiction that follows it: A wide variety of tables and features created by Mr. Pedersen on the Responsys platform, with no allegation that they are implemented or encouraged by Oracle. Again, claim 1 requires "an individual message generator . . . to generate an individual message to be sent to the recipient specified by the messenger . . . according to the delivery parameters." Compl., Ex. A at 11:40-46. And this "generator" must be part of "the electronic computer system." Id. at 11:25.

However, Mr. Pedersen depicts that he has *manually*:

1. put together a list of recipients in "PETER_TEST_TABLE"

**Compl., Ex. B at 14 Fig. 11 (depicting Mr. Pedersen's name in his table) (emphasis in original).**



2. typed the variable names "WEEKDAY," "INTERESTS," and "DEVICE" into the table's variable fields

   **Compl., Ex. B at 8, Fig. 4 (inviting the "messenger" to "enter the field names").**



3. created a filter to find where "WEEKDAY" equals "Monday" and "DEVICE" equals "eMail"

11

**Compl., Ex. B at 14 Fig. 11 (depicting "filter designer" with typed in values "Monday," "Promotions," and "eMail") (emphasis in original).**



4. named the results of that filter "Segment Monday" (*id.*),

5. created a bulk email campaign with the title "Monday Promotional Email,"

**Compl., Ex. B at 15 Fig. 12 (depicting campaign "created by matheus.cunha") (emphasis in original).**



6. and selected "Segment Monday" such that everyone in that filter receives an email.

**Compl., Ex. B at 15 Fig. 12 (inviting the "messenger" to "identify who will receive this campaign" followed by the checked box "everyone in any of the selected filters") (emphases in original).**



Most egregiously, Mr. Pedersen does not even depict this or any email being sent on Monday. Instead, the only date this is alleged to have occurred is *Wednesday*, February 9, 2022.

**Compl., Ex. B at 15 Fig. 12.**

Mr. Pedersen's self-creation of the accused fields and tables along with his own manual use of the delivery parameters—as depicted in his various screenshots—cannot be reconciled with his conclusory allegations about the functionality of Responsys. *At most*, the claim chart alleges only that Mr. Pedersen himself has decided to send bulk emails to various recipients at a particular day and time of *his* choosing. No part of *Responsys* ever is ever shown to function as an "individual message generator" using "the delivery parameters" as required by claim 1. *See generally TQ Delta, LLC v. 2Wire, Inc.*, 486 F. Supp. 3d 803, 810 (D. Del. 2020) ("Direct infringement of an apparatus claim requires that each and every limitation set forth in a claim appear in an accused

product." (quoting *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016)).

Mr. Pedersen's conclusory and boilerplate Complaint cannot remedy the implausible infringement read set forth in Exhibit B. The Complaint should be dismissed.

## V. ANY AMENDMENT TO THE COMPLAINT IS FUTILE

Much of Responsys functionally is not secret. Video demonstrations of the software are publicly available on the Oracle website, as cited by Mr. Pedersen in his Complaint.[2] Detailed descriptions of Responsys functions are publicly available on the Oracle Responsys Help Center—also cited by Mr. Pedersen in his Complaint.[3] As demonstrated by Exhibit B, Mr. Pedersen himself even had direct access to Responsys:

*See* **Compl., Ex. B at 10 Fig. 6 (Mr. Pedersen entering his address into Responsys as his purported "messenger profile data"); Compl., ¶ 1 ("[Mr. Pedersen] is a citizen of Denmark having an address located at Gammel Hareskovvej 285, 3500 Værløse, Denmark.")**



---

[2] Compl., Ex. B at 1 (citing https://www.oracle.com/cx/marketing/campaign-management/oracle/)

[3] *See, e.g.,* Compl., Ex. B at 11 (citing https://docs.oracle.com/en/cloud/saas/marketing/responsys-user/CampaignDesigner_CreateCampaign.htm)

**See Compl., Ex. B at 6 Fig. 2 (Mr. Pedersen's purported "recipient profile data" with his own first name and initial of his last name typed into the "Full Name" field).**



Plainly, Mr. Pedersen already had the information available to conclude whether Responsys infringes the '920 patent. Any leave to amend would be futile, and the Court should dismiss the claims with prejudice. *Brown v. Tarrant County*, 985 F.3d 489, 498 (5th Cir. 2021) (affirming denial of leave to amend because "amendment would be futile").

## VI. CONCLUSION

For the foregoing reasons, Defendant Oracle Corporation respectfully requests that the Court grant its motion and dismiss Plaintiff's claims for infringement of the '920 patent under Rule 12(b)(6).

Submitted: June 30, 2022

Respectfully submitted,

/s/ David P. Whittlesey

David P. Whittlesey
SHEARMAN & STERLING LLP
300 West 6th Street, 22nd Floor
Austin, TX 78701
Telephone: 512.647.1907
Facsimile: 512.857.6602
David.Whittlesey@Shearman.com

Matthew G. Berkowitz
(*pro hac vice application pending*)
Yue (Joy) Wang
(*pro hac vice application pending*)
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Facsimile: 650.838.3699
Matt.Berkowitz@shearman.com
Joy.Wang@Shearman.com

Aaron Morris
(*pro hac vice application pending*)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
Facsimile: 415.616.1339
Aaron.Morris@Shearman.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was electronically filed on June 30, 2022, using the Court's CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

_____
David P. Whittlesey

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was electronically filed on June 30, 2022, using the Court's CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

_____
David P. Whittlesey